iTerritorial Law Library

FILED
SUPERIOR COURT
OF GUAM

2012 JUL -3 PM 4: 19

CLERK OF COURT

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,        )        CASE NO CF0690-11

             )

       v.            )        **DECISION AND ORDER ON**

             )        **DEFENDANT'S MOTION TO**

ELIAS SENTURO ERIMAS,      )        **SUPPRESS**

             )

             )

       Defendant.       )

             )

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III, on March 7, 2012, on Defendant Erimas' Motion to Suppress. Attorney Terence E. Timblin represented Defendant, Elias Senturo Erimas. Assistant Attorney General Brian Gallagher represented the People of Guam. Following the hearing the Court took the matter under advisement. Upon weighing the credibility of the witnesses and evidence offered at the hearing and after consideration of the parties' arguments, this Court now issues its Findings and Facts and Conclusions of Law.

## FACTUAL HISTORY

During a December 2012 investigation of a missing persons complaint involving a fourteen-year-old minor girl, L.M.C. ("victim"), Guam police officers learned that Defendant, then a 28 year old male, may have engaged in sexual penetration with the victim. Defendant, a native of Chuuk, had only resided on Guam for seven months and did not speak English. Officers placed Defendant in custody and a Chuukese-speaking police officer served as a translator for Defendant. The officer read aloud, in Chuukese, each paragraph of the police department's standard Custodial Interrogation Form (CIF). The CIF describes an individual's so-called <u>Miranda</u> rights and allows space for the confined suspect to

both acknowledge his understanding of those rights and consent to waive those rights prior to speaking with officers.

After the officer read Defendant his rights, Defendant initialed by each paragraph of the CIF indicating that he understood each of his rights. Defendant also signed at the bottom of the form, acknowledging his desire to waive those rights. Officers then questioned Defendant about his relationship with the minor victim. In response to the questions, Defendant stated that he had had sexual intercourse with the victim and that he knew she was fourteen years old. Defendant now seeks to suppress his inculpatory statement by claiming that he did not understand the CIF and that his waiver of his constitutional rights was not knowing, voluntary, and intelligent.

## FINDINGS OF FACT

Based on the testimony provided at the hearing, this Court finds the following facts were supported by a preponderance of the evidence:

1. Defendant is a native of Chuuk and does not speak the English language.

2. While Defendant was in custody, a Guam police officer fluent in Chuukese translated all English communication into Chuukese for Defendant's benefit and Defendant was able to understand the communications.

3. Officers translated, verbatim, each paragraph of the CIF. With respect to the paragraph relating to the Defendant's right to an attorney, officers explained that an attorney could help Defendant.

4. Defendant initialed next to each paragraph to indicate his understanding of his rights and Defendant signed the form indicating his waiver of those rights.

5. Defendant appeared to understand the substance of the form. At no point did defendant ask questions or indicate that he did not understand what was being read to him.

6. Although Defendant testified that officers suggested to him that the process would be better for Defendant if he signed the form as opposed to leaving the form blank, this Court believes Defendant's testimony to be incredible and finds insufficient support to conclude that officers engaged in any oppressive behavior, offered any promises, or utilized any other coercive techniques to induce Defendant to sign the CIF and give a statement.

## CONCLUSIONS OF LAW

1. In determining whether Defendant's inculpatory statements should be suppressed, this Court must determine whether Defendant's <u>Miranda</u> waiver was valid and whether Defendant's statements were voluntarily given.

## Waiver of Miranda

2. A statement given during a custodial interrogation is admissible only if the police warned the suspect of his constitutional rights as set forth by the United States Supreme Court in <u>Miranda v. Arizona</u>, 284 U.S. 436, 479 (1996), and only if, prior to offering the statement, the defendant provided a voluntary, knowing, and intelligent waiver of those rights. <u>See</u> <u>Guam v. Rasauo</u>, 2011 Guam 1 ¶16; <u>United States v. Shi</u>, 525 F.3d 709, 727 (9th Cir. 2008) (citing <u>United States v. Garibay</u>, 143 F.3d 534, 536 (9th Cir.1998)). The following tests are employed to determine whether a waiver is knowing and voluntary:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation'

reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived.

<u>Moran v. Burbine</u>, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (quoting <u>Fare v. Michael C.</u>, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)); <u>see also</u> <u>United States v. Doe</u>, 155 F.3d 1070, 1074 (9th Cir.1998) ("A waiver is voluntary if, under the totality of the circumstances, the confession is the product of a free and deliberate choice rather than coercion or improper inducement."); <u>People v. Hualde</u>, 1999 Guam 3 ¶ 30.

3. Where the person waiving his or her rights is a foreign national, courts must subject their analysis to heightened scrutiny:

> In the case of a foreign national, the voluntariness inquiry also includes assessment of the following factors: (1) whether the defendant signed a written waiver; (2) whether he was read his rights in his native language; (3) whether he appeared to understand those rights; (4) whether he had the assistance of a translator; (5) whether his rights were explained painstakingly; and, (6) whether he had experience with the American criminal justice system.

<u>United States v. Gamez</u>, 301 F.3d 1138, 1144 (9th Cir. 2002) (citing <u>United States v. Amano</u>, 229 F.3d 801, 804–05 (9th Cir. 2000).

4. The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." <u>Colorado v. Spring</u>, 479 U.S. 564, 574, 107 S.Ct. 851, 857 (1987).

5. The government bears the burden of showing a valid waiver by a preponderance of the evidence. <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986).

6. In this case the evidence showed that Defendant's waiver was valid. Defendant had a translator who read him his constitutional rights in his native language. Officers went beyond the mere written words of the CIF by generally explaining the purpose of a lawyer. Moreover, the circumstances indicate that Defendant knew his rights: Officers testified that Defendant appeared to understand the translation of the CIF; Defendant initialed next to each paragraph on that form indicating that he understood his rights; and Defendant, by his own admission, did not ask any questions about the CIF. Having heard an oral translation of the CIF and having indicated that he understood his rights, Defendant then signed the written waiver without question. Defendant appears to be of normal intelligence and there is no claim that Defendant lacked competency to waive his rights. Finally, this Court found above that officers did not employ coercive tactics that would raise questions as to the voluntariness of the waiver.

7. The only factor weighing in Defendant's favor is that he had not had prior experience with the American criminal justice system. However, given the totality of the circumstances, this Court is not convinced that that Defendant's lack of familiarity with the justice system is sufficient to allow a finding that the waiver was not voluntary. Based on the evidence, this Court concludes that Defendant's waiver was voluntary, knowing, and intelligent. This conclusion is in accordance with precedent in other jurisdictions addressing similar issues of waiver by non-English speaking defendants. See, e.g., United States v. Bautista-Avila, 6 F.3d 1360 (9th Cir. 1993) (Waiver by Mexican suspect who possessed sixth grade education and no experience with American criminal justice system held valid where Miranda rights were read to him in Spanish and suspect signed a written waiver); United States v. Guerrero, 296 Fed. Appx. 764 (11th

Cir. 2008) (evidence that defendant received oral recitation of <u>Miranda</u> waiver form in defendant's native language and that defendant initialed each paragraph indicating his understanding of his rights was sufficient to show defendant's waiver of those rights was knowing, voluntary, and intelligent); <u>State v. Ortez</u>, 178 N.C. App. 236, 631 S.E.2d 188 (2006) (Spanish-speaking defendant classified as mildly mentally retarded held to have provided a valid waiver of <u>Miranda</u> rights that were orally read to him where defendant did not indicate that he was confused); <u>Com. v. Alves</u>, 35 Mass. App. Ct. 935, 625 N.E.2d 559 (1993) (Portuguese speaking defendant having no experience with criminal justice system found to have validly waived <u>Miranda</u> rights that had been read to defendant in Portuguese).

## Voluntariness of Defendant's Statement

8. In addition to considering the propriety of Defendant's <u>Miranda</u> waiver, the Court must also determine whether the statement itself was voluntarily given. In <u>United States v. Leon Guerrero</u>, 847 F.2d 1363, the Ninth Circuit held that "[b]efore a criminal defendant's statement can be used against him, the government must prove its voluntariness by a preponderance of the evidence." <u>Leon Guerrero</u>, 847 F.2d at 1365 (citations omitted); cf. <u>People v. Farata</u> 2007 Guam 8 ¶ 56-63 (holding that a statement given post-<u>Miranda</u> must be knowing and voluntary).

9. An inculpatory statement is voluntary only when it is the product of a rational intellect and a free will. <u>United States v. Bautista</u>, 362 F.3d 584, 589 (9th Cir. 2004). "In evaluating voluntariness, the test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." <u>United States v.</u>

-6-

Male Juvenile, 280 F.3d 1008, 1022 (9th Cir.2002) (citation and internal quotation marks omitted).

10. A statement is involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." Bram v. United States, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897). Where a promise is made by law enforcement, that promise "must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances." United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988) (citations omitted).

11. In the present case, there was very little testimony at the hearing addressing the specific circumstances surrounding the confession. However, the brief testimony relating to Defendant's confession indicated that following the Miranda waiver, Defendant freely gave his statement in response to questioning by the officers. There is no indication that officers employed inappropriate tactics to induce a statement by Defendant. This court finds that given the totality of the circumstances, Defendant's statement was voluntary.

## CONCLUSION

Based on the foregoing, Defendant's motion to suppress is hereby DENIED. A trial setting is scheduled for July 5, 2012 at 3:00 p.m.

It is **SO ORDERED** this 3rd day of July, 2012.

_____

HONORABLE ALBERTO C. LAMORENA, III
Presiding Judge, Superior Court of Guam

Is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam.

JUL 03 2012

Domingo M. Nego
Deputy Clerk, Superior Court of Guam

-7-